Town of Newmarket v. Harvard Indus.   CV-96-249-JD   07/31/96
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Town of Newmarket, N.H.

        v.                              Civil No. 96-249-JD

Harvard Industries, Inc., et al.


                        O R D E R


    The plaintiff, the Town of Newmarket, New Hampshire, brought
this action to enforce a settlement agreement against the
defendants, Harvard Industries, Inc. and Kingston-Warren
Corporation.  Before the court is defendants' motion to dismiss
for improper venue, or in the alternative, to transfer (document
no. 2), and the plaintiff's motion for remand (document no. 5).


                        Background

    The town is a municipal corporation.  Harvard is
incorporated in Delaware, and maintains its principal place of
business in New Jersey.  Kingston-Warren, a subsidiary of
Harvard, is incorporated in New Hampshire, and maintains its
principal place of business in New Hampshire.

    From 1951 to 1985 the town operated the municipal landfill
in Newmarket.  Writ of Summons ¶ 5.  In 1985, the New Hampshire
Department of Environmental Services ordered the landfill closed
because of hazardous waste.  Id. ¶ 6.  After the town informed

Harvard and Kingston-Warren that they were potentially liable for the costs of cleaning and closing the landfill, the parties entered into various agreements to investigate contaminants at the landfill. Id. ¶ 7-8. On April 11, 1991, before the cleanup was complete, an involuntary petition under chapter 11 of the bankruptcy code was filed against Harvard in the United States Bankruptcy Court for the District of Delaware. On May 2, 1991, Harvard and nine of its wholly owned subsidiaries, including Kingston-Warren, filed voluntary petitions for relief under chapter 11. The bankruptcy court consolidated the cases. Affidavit in Support of Defendants' Motion to Dismiss or, in the Alternative, for a Transfer of Venue ¶ 2.

On August 13, 1991 the town filed a proof of claim against all of the debtors, seeking contribution for the cost of closing the landfill. Writ of Summons ¶¶ 13-14. In an amended proof of claim, the town alleged that the debtors owed fifty percent of the estimated total costs, or $9,602,701.94. Affidavit ¶ 5. The bankruptcy court limited the town's claims to include only Harvard and Kingston-Warren and called for an estimation hearing. Id. ¶ 6. Negotiations followed, and the parties drafted a settlement agreement on July 8, 1992. Writ of Summons ¶ 15. The agreement detailed the town's claims for the costs of cleanup, which included, inter alia, "up to [$300,000] pre-petition

2

engineering fees, as approved by the Harvard Bankruptcy Court."
Settlement Agreement between Harvard Industries, Inc., the
Kingston-Warren Corp., and the Town of Newmarket ("Settlement
Agreement") ¶ 1(b)(vi).  The agreement also included an
Administrative Expense Claim:

> Newmarket shall have an Administrative Expense Claim as
> defined in the plans of reorganization filed in the
> Harvard Bankruptcy Proceeding . . . , in the amount
> actually paid pursuant to paragraph 4(a)(i), but in no
> event shall the Administrative Expense Claim be greater
> than [$160,000].

Settlement Agreement ¶ 2(a).  The parties further agreed that

> [p]romptly upon the latter of the signing and delivery
> of this settlement agreement by all parties or the
> approval of the terms and conditions of this settlement
> agreement by the Harvard Bankruptcy Court, Harvard
> shall execute and deliver to Newmarket a guaranty,
> which guaranty shall be in the form and contain the
> terms set forth on Schedule A annexed.[1]

Settlement Agreement ¶ 7.

At some point following the parties' execution of the
settlement agreement, the defendants filed a motion to approve
the agreement, attaching an affidavit in which the town
administrator estimated the pre-petition engineering costs at
$301,332.42.  The bankruptcy court approved the settlement
agreement on July 21, 1992, "in all respects."  In re Harvard
Indus., Inc., Case No. 91-404, Clm. No. 2524, slip op. at 2

---

[1] The parties have not provided the court with Schedule A.

3

(Bankr. D. Del. July 21, 1992). On August 5, 1992, "in consideration of and as an inducement to the Town of Newmarket to enter into a settlement agreement dated July 8, 1992," Harvard guaranteed to the town "the full and punctual payment and performance by Kingston-Warren of all of its obligations under the Settlement Agreement." Guaranty at 1. The guaranty included the following provision:

> This Guaranty shall be governed by New Hampshire law in all respects, whether as to interpretation or enforcement. The parties agree that jurisdiction over any action brought under the terms of this Guaranty or the underlying settlement agreement shall be vested in the courts of New Hampshire.

Guaranty ¶ 6.

At some point before or after the bankruptcy court approved the settlement agreement, it approved a reorganization plan for Harvard. Writ of Summons ¶ 17. The plan states that

> [s]ubject to the provisions of Section 502 of the Code, and unless it otherwise orders, the Court shall not have or retain jurisdiction, and the Debtor shall not seek to invoke the jurisdiction of the Court to determine or adjudicate the validity or extent of any Class Six or Class Seven Claim arising before or after the Petition Date, whether or not such Claim is disputed, contingent or unliquidated.

Sixth Amended Plan of Reorganization of Harvard Industries, Inc. ("Plan") § 9.04. The plan defines class seven claims as "[a]llowed governmental claims arising out of any environmental statute or regulation or environmental common law Claim against

4

the Debtor."  Plan § 3.07.  The plan defines "Administration

Expense" as

> a Claim for payment of an administrative expense of the
> kind specified in Section 503(b) of the Code and
> referred to in Sections 507(a)(1) and 507(a)(2) of the
> Code, including, without limitation, the actual,
> necessary costs and expenses of preserving the Debtor's
> estate and operating the business of the Debtor,
> including wages, salaries, and commissions for services
> rendered after the commencement of the Debtor's Case,
> compensation for legal and other services, and
> reimbursement of expenses awarded under Sections 330(a)
> of the Code, and all fees and charges assessed against
> the Debtor's estate under Chapter 1930 of Title 28 of
> the Unites States Code.

Plan § 1.03.

Upon completion of the investigation and cleanup of the

landfill and construction of the landfill cap, the town

calculated that the defendants owed $796,125 under the terms of

the settlement agreement.  Writ of Summons ¶ 21.  When the

defendants only paid $245,354.83, the town filed a writ of

summons in New Hampshire state court on April 3, 1996, claiming

that Harvard and Kingston-Warren had breached the settlement

agreement.  Id. ¶ 22-25.  On May 3, 1996, the defendants removed

the action to this court pursuant to 28 U.S.C. §§ 1441, 1446,

1452 and Bankruptcy Rule 9027, and requested that the court refer

the case to the United States Bankruptcy Court for the District

of New Hampshire pursuant to Local Rule 77.4(a).  Notice of

Removal at 4.  On May 10, 1996, the defendants filed the instant

motion to dismiss or transfer.  On May 17, 1996, the town filed a Motion for Remand.

The defendants' bankruptcy case is still pending in the United States Bankruptcy Court for the District of Delaware.

## Discussion

### I.  Motion for Remand

The court begins its inquiry into the plaintiff's motion for remand by determining whether it has subject-matter jurisdiction over the instant action.  28 U.S.C. § 1452(a) provides that

> [a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C.A. § 1452(a) (West 1994).  28 U.S.C. § 1334 defines the range of federal jurisdiction over bankruptcy cases and proceedings:

> (a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. § 1334 (West 1993).  If a proceeding is "related to" a bankruptcy case, § 1334(b) empowers all federal district courts

to adjudicate the action.[2]  Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1211 (3d Cir. 1991); see also Brock v. American Messenger Serv., Inc., 65 B.R. 670, 672 (D.N.H. 1986). Neither the bankruptcy court nor the parties can independently confer subject-matter jurisdiction on the federal courts.  In re Poplar Run Ltd. Partnership, 192 B.R. 848, 859 (Bankr. E.D. Va. 1995).

When deciding whether a proceeding is related to a bankruptcy case the court inquires

> whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (citations omitted); see also In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991).  The federal courts have retained jurisdiction over matters similar to this case.  See In re Blue

---

[2] "Cases under title 11" refers only to bankruptcy petitions. In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991).  Proceedings "arising under title 11" "involve a cause of action created or determined by a statutory provision of title 11."  Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir. 1987). Those proceedings "arising in" cases under title 11 are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. at 97.

7

Diamond Coal Co., 163 B.R. 798, 806 (Bankr. E.D. Tenn. 1994) (dispute over settlement agreement between debtor and creditor would "affect the amount of the distribution to unsecured creditors" under reorganization plan where agreement was approved by bankruptcy court); Searcy v. Knostman, 155 B.R. 699, 704 (S.D. Miss. 1993) (suit attacking settlement agreement reached in bankruptcy court between two defendants could "clearly have an impact on the estate being administered in bankruptcy"); Franklin Computer Corp. v. Apple Computer, Inc. (In re Franklin Computer), 60 B.R. 795, 802 (Bankr. E.D. Pa. 1986) (complaint alleging breach of settlement agreement between creditor and debtor, which was approved by bankruptcy court, arises in or relates to bankruptcy case).

The outcome of this case conceivably could have an effect on the defendant's bankruptcy estate. If the town is successful, the amount available to the unsecured creditors will be reduced. If the town is unsuccessful, the amount available will be enhanced. Therefore, the court finds that this case is "related to" the pending bankruptcy case and, as a result, that the federal courts have jurisdiction over the dispute.

The plaintiff argues that even if the court has jurisdiction over the proceeding, it should remand the case under 28 U.S.C. § 1452(b), which provides that

8

> [t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

28 U.S.C.A. § 1452 (West 1994). Federal courts consider a number of factors when deciding whether to remand a proceeding under § 1452(b):

> (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court.

Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re Videocart, Inc.), 165 B.R. 740, 744 (Bankr. D. Mass. 1994). Compare Lindy's Operating, Inc. v. Lindy's Operating, Inc. (In re Rockefeller Ctr. Properties), No. 95 CIV. 5142(PKL), 1995 WL 611183, 1 (S.D.N.Y. Oct. 17, 1995) (remand not warranted where, inter alia, controversy involved property of the bankruptcy estate and no difficult questions of state law were presented) with Cenith Partners, 165 B.R. at 744 (remanding action in which creditor sued nondebtor third parties primarily under state law theories) and Searcy, 155 B.R. at 710 (remanding proceeding that "mainly concern[ed] parties who have no connection to the bankruptcy court") and Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991) ("The removing defendants are not creditors of Drexel's estate or

9

parties otherwise involved in the bankruptcy proceeding.").

In this case, the plaintiff is a creditor and both defendants are debtors.  The town has supplied no evidence that it will be prejudiced by the removal, that the case will present difficult questions of state law, or that the state courts have a special interest in the action.  Accordingly, the court finds that transfer is not warranted under the factors articulated above.

The town also argues that remand is appropriate because the forum selection clause of the guaranty, which provides that jurisdiction over actions brought under the settlement agreement "shall be vested in the courts of New Hampshire," requires that the case be adjudicated in state court.  The defendants argue that the clause at issue is merely a consent to jurisdiction in New Hampshire and does not require that the New Hampshire courts, state or federal, have exclusive jurisdiction over the action.

Federal courts will enforce a clause that precludes a federal forum with clear and unambiguous language.  City of New York v. Pullman Inc., 477 F. Supp. 438, 442 (S.D.N.Y. 1979).  However, the courts will "allow the scope of a [jurisdictional] term's meaning to expand to its greatest natural perimeters," id., and will not enforce a waiver of federal forum unless the waiver is unambiguous, Submersible Sys. v. 21st Century Film

10

Corp., 767 F. Supp. 266, 267 (S.D. Fla. 1991); see LFC Lessors, Inc. v. Pacific Sewer Maintenance, 739 F.2d 4, 7 (1st Cir. 1984) (clause providing that rights and liabilities of parties would be determined by courts "of the Commonwealth of Massachusetts" precluded federal jurisdiction because construction of clause to include federal district courts would be nonsensical). Compare Pullman, 477 F. Supp. at 442 (parties' agreement "to submit any controversies or problems arising out of this contract to the New York courts and the New York courts only" not an exclusive grant of jurisdiction to the New York state courts) with Seward v. Devine, 888 F.2d 957, 962 (2d Cir. 1989) (clause providing that "the New York State Supreme Court, Delaware County, shall have jurisdiction over all litigation which shall arise out of any disputes or disagreements between the parties" precluded a federal forum) and Spatz v. Nascone, 364 F. Supp. 967, 974 (W.D. Pa.) (clause requiring actions brought under agreement to be tried before "Courts of the Commonwealth of Pennsylvania" granted exclusive jurisdiction to state courts), motion to vacate denied, 368 F. Supp. 352 (1973).

The parties use of the phrase "the courts of New Hampshire" in the forum selection clause could implicate either sovereignty or geography. See Spatz, 364 F. Supp. at 970. However, the widest scope of the meaning includes all courts in New Hampshire.

11

Further, the phrase "vested in the courts of New Hampshire" is clearly distinguishable from those forum selection clauses cited above that include a term of sovereignty such as "State" or "Commonwealth". See Seward, 888 F.2d at 962 ("the New York State Supreme Court"); LFC Lessors, Inc., 739 F.2d at 6 ("courts . . . of the Commonwealth of Massachusetts"); Spatz, 364 F. Supp. at 969 ("Courts of the Commonwealth of Pennsylvania"). Each of these clauses clearly indicate the sovereignty of the state court. The instant clause merely indicates where the location of the action must be by using the more general phrase "courts of New Hampshire."[3] As the forum selection clause of the guaranty does not unambiguously preclude federal jurisdiction, the court finds that remand is not warranted.

The plaintiff's motion for remand under 28 U.S.C. § 1452(b) is denied.

---

[3]The court also notes that even if the clause at issue does not specifically authorize a federal forum, its language is merely permissive and does not unambiguously preclude one. See John Boutari & Son v. Attiki Importers & Distribs., 22 F.3d 51, 53 (2d Cir. 1994) ("'[A]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction in another unless it contains specific language of exclusion.'") (quoting Pullman, 477 F. Supp, at 442 n.11).

12

II. Motion to Dismiss or Transfer

    A. 28 U.S.C. § 1409(a)

    The defendants argue that the court should transfer the case to the United States District Court for the District of Delaware because a proceeding related to a bankruptcy case can be commenced only in the district where the bankruptcy case is pending. The plaintiff disputes this contention.

    28 U.S.C. § 1409(a) provides that

> a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

28 U.S.C.A. § 1409(a) (West 1993).

    Relying on the plain meaning of the word "may," courts have held that §1409(a)'s language is permissive and not mandatory. See Calumet Nat'l Bank v. Levine, 179 B.R. 117, 121 (N.D. Ind. 1995) ("[P]arties have the option of commencing an action in the district court of the bankruptcy district, but are not required to commence the action there."); Farmers Bank v. March (In re March), 140 B.R. 387, 389 n.3 (E.D. Va. 1992) ("Because section 1409(a) uses the term 'may,' the section is permissive rather than mandatory and, thus, reflects a legislative purpose to promote flexibility in determining proper bankruptcy venue."), aff'd, 988 F.2d 498 (4th Cir.), cert. denied, 114 S.Ct. 182 (1993); Brock v. American Messenger Serv., Inc., 65 B.R. 670, 672

13

(D.N.H. 1986) ("§ 1409(a) directs where an action "may be" brought, not where it must be brought."). See generally Collier on Bankruptcy ¶ 3.02, at 3-135-39 (Lawrence P. King et al. eds., 15th ed. 1996).

The plain language and judicial interpretation of the statute give clear guidance to the court. Because § 1409(a) does not require that actions related to a bankruptcy case be brought in the district in which the bankruptcy case is pending, the District of New Hampshire is a proper venue for this action under the general venue statute. See 28 U.S.C.A. § 1391(c) (West 1993).

    B. 28 U.S.C. § 1412

The defendants next assert that the court should transfer this case pursuant to 28 U.S.C. § 1412, which provides that

> [a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C.A. § 1412 (West 1993). Courts generally have reserved the use of § 1412 for "core proceedings" as defined by 28 U.S.C. § 157, and have stated that 28 U.S.C. § 1404 is the proper statute for transfer of all "non-core" proceedings. See Searcy v. Knostman, 155 B.R. 699, 706-07 & n.17 (S.D. Miss. 1993) (citing In re Thomson McKinnon Sec., Inc., 126 B.R. 833, 834-35

14

(S.D.N.Y. 1991); <u>Goldberg Holding Corp. v. NEP Prods., Inc.</u>, 93 B.R. 33, 34 (S.D.N.Y. 1988)).[4]  However, because § 1412 and § 1404 are so similar, the court need not decide whether this action is a "core" or "non-core" proceeding.  <u>Cf.</u> <u>In re Spillane</u>, 884 F.2d 642, 645 n.4 (1st Cir. 1989).

The court may not disturb the plaintiff's choice of forum unless the defendant proves by a preponderance of the evidence that the transfer is warranted.[5]  <u>Brock</u>, 65 B.R. at 672. The court considers the following factors when determining if transfer is warranted under § 1404:

> (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

[4]28 U.S.C. § 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C.A. § 1404 (West 1993).

[5]The court acknowledges the existence of authority supporting a presumption in favor of transferring venue to the district in which the bankruptcy case is pending.  <u>See</u> <u>Maritime Elec. Co., v. United Jersey Bank</u>, 959 F.2d 1194, 1212 (3d Cir. 1992); 3 David G. Epstein et al., 1 <u>Bankruptcy</u> 216 (1992). However, even assuming <u>arguendo</u> the correctness of such a presumption, the court finds the presumption to be rebutted for the reasons discussed <u>infra</u>.

Id. at 672; see also In re Waits, 70 B.R. 591 (Bankr. S.D.N.Y. 1987) (considering the following factors when deciding whether to transfer an action under § 1412: the proximity of the creditors, debtors, assets, witnesses, and evidence; the relative economic harm to debtors and creditors caused by a transfer; the economics of administering the estate; the effect on parties willingness or ability to participate in the case or in adversary proceedings; and the availability of compulsory process and the cost associated with the attendance of unwilling witnesses).

The District of New Hampshire is the most convenient forum for this action. The cleanup for which the town is seeking contribution occurred in New Hampshire. The documents that record the town's expenditures are presumably in New Hampshire. Witnesses most likely will reside in New Hampshire.

Moreover, the "interests of justice" militate in favor of keeping the action in New Hampshire. Most notably, the guaranty, which was cross-referenced in the settlement agreement, served as consideration for the settlement agreement, and was approved by the bankruptcy court, contains a forum selection clause that reflects the parties' intent to adjudicate claims concerning the settlement agreement in New Hampshire.[6]

_____

[6]The defendants have asserted two additional grounds for transfer, which the court considers in conjunction with the

16

After considering the convenience of the parties and the interests of justice, the court finds that the defendant has failed to establish by a preponderance of the evidence that transfer is warranted.

## C. Administrative Expenses

The defendants argue as a final matter that the instant action seeks payment, at least in part, for administrative expenses, and that the only proper venue for administrative matters is the court where the bankruptcy case is pending, the Delaware bankruptcy court. The defendants are correct concerning the proper venue for administrative matters; Congress clearly

interests of justice. First, the defendants contend that transfer is warranted because paragraph 1(b)(vi) of the settlement agreement requires that the bankruptcy court approve the town's claim for pre-petition engineering fees. Notice of Removal ¶ 7. The argument is unavailing. The bankruptcy court approved the fees when it approved the settlement agreement in full, including the calculation of the pre-petition engineering fees.

Second, the defendants contend that the bankruptcy court retained jurisdiction over the entire case because Section 9.04 of the reorganization plan is not applicable to the instant action. Specifically, the defendants contend that section 9.04's disclaimer of jurisdiction is "[s]ubject to the provisions of Section 502 of the [Bankruptcy] Code," and that the action is governed by that statutory provision.

The argument fails. The parties are adjudicating a dispute that arose out of the settlement agreement, and not the allowance of a particular claim under § 502. Thus, to the extent the instant action seeks to determine the validity or extent of a class seven claim, the bankruptcy court has not retained jurisdiction over it.

intended that such matters should be adjudicated in the district in which the bankruptcy case is filed.  See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 447 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 ("Though these venue provisions are phrased in broad terms, with respect to administrative matters in a case they generally will not apply. The bankruptcy court in which the case is filed will hear those matters.").  However, the defendants have failed to provide any evidence that the claims at issue properly are characterized as administrative expenses, and merely ask that the entire case, including claims over which the bankruptcy court has relieved itself of jurisdiction, be transferred.  Absent a showing that any of these claims must be brought in the Delaware bankruptcy court, the defendant's motion must be denied.

III.  Transfer to New Hampshire Bankruptcy Court

The defendants requested in their notice of removal that the instant action be referred to the United States Bankruptcy Court for the District of New Hampshire.  Notice of Removal at 4 (citing Local Rule 77.4(a)).  Under Local Rule 77.4(a), which incorporates the court's standing order of January 18, 1994, the court refers actions related to ongoing bankruptcy cases to the New Hampshire bankruptcy court.  However, the court considers the rule inapplicable to the instant action because the bankruptcy

18

case to which the instant action is related is pending in another district. Accordingly, referral is not warranted.

Conclusion

The plaintiff's Motion for Remand (Document No. 5) is denied. The defendants' Motion to Transfer (Document No. 2) is denied. The court will retain jurisdiction over the case. The parties would be well advised at this point in time to direct their efforts to the merits of the case and to engage in good faith settlement discussions in order to resolve this action without trial. The matter shall be scheduled for a preliminary pretrial before the Magistrate Judge. Counsel shall be prepared to discuss mediation with the Magistrate Judge.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

July 31, 1996

cc:  Robert J. Gallo, Esquire
     Steven E. Grill, Esquire
     Martin F. Siegal, Esquire
     Sheldon Schacter, Esquire

19